UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

KOSAL VONG, an individual,

        Plaintiff,                NO. CIV. S-12-2860 LKK/DAD

    v.

                                O R D E R

BANK OF AMERICA, N.A.,
(for itself and as the
successor to COUNTRYWIDE
HOME LOANS, INC., d/b/a
America's Wholesale Lender,
Inc., and as successor to
BAC Home Loans Servicing, LP);
and DOES 1 through 100,
inclusive,

        Defendants.
_____/

    This is a foreclosure case.  For the reasons set forth below:
defendant's motion to dismiss the federal claim will be granted;
and the motion to dismiss the state claims will be granted in part,
and denied in part.[1]

////

////

_____

[1] Although the sole federal claim will be dismissed, the court
will retain diversity jurisdiction.

1

I.   THE FACTS

    A.   **The Promissory Note and Deed of Trust.**

    Plaintiff financed the purchase of his home with a "negotiable promissory note" ("note") for $364,000 from non-party Countrywide Home Loans ("Countrywide"), aka "America's Wholesale Lender."[2] Complaint at 5 ¶ 15; Request for Judicial Notice ("RfJN") Exh. F ("State Complaint") (ECF No. 9-1, pp. 32-45) ¶ 5.[3] Defendant Bank of America ("defendant") is the successor in interest to Countrywide.   Complaint at 3 ¶ 8.   The original servicer on the loan was non-party BAC Home Loans Servicing, LP.   <u>Id.</u>   Defendant Bank of America is the successor in interest to BAC Home Loans. <u>Id.</u>

---

    [2] The note has not been submitted to the court by either party.

    [3] Defendant has filed a Request for Judicial Notice ("RfJN") of the following documents recorded in the official records of San Joaquin County:

| | |
|---|---|
| October 19, 2005 | Deed of Trust (Doc. No. 2005-276606) (ECF No. 9-1 at 1-17); |
| August 26, 2011 | Assignment (Doc. No. 2011-105328) (ECF No. 9-1 at 18-19); |
| September 15, 2011 | Assignment (Doc. No. 2011-112328) (ECF No. 9-1 at 27-28); |
| September 24, 2011 | Notice of Default (Doc. No. 2011-112329) (ECF No. 9-1 at 20-24); |
| December 22, 2011 | Notice of Trustee's Sale (Doc. No. 2011-160722) (ECF No. 9-1 at 25-26); and |
| March 26, 2012 | Superior Court Complaint, <u>Vong v. BAC Home Loans Servicing</u>, Case No. 39-2012-00278522-CU-OR-STK (Super. Ct. San Joaquin Cty.) (ECF No. 9-1 at 29-79). |

The documents appear to be properly subject to judicial notice, and plaintiff has not objected to the request.   Accordingly, the request is **GRANTED,** pursuant to Fed. R. Evid. 201(b)(2) & (c)(2).

To secure repayment of the note to Countrywide, plaintiff executed a Deed of Trust.  Complaint at 5 ¶¶ 16-17; Deed of Trust, RfJN Exh. A ("Trust Deed" or "Security Instrument") (ECF No. 9-1, pp. 2-17) at 3.  ReconTrust Co., N.A., is listed as the "Trustee." Complaint at 5 ¶ 17; Trust Deed at 3 ¶ (D).  The Trust Deed secures the repayment of the note by transferring title of the property, in trust, to the Trustee.  Trust Deed at 4.  The Trustee is also granted the "power of sale," which enables the Trustee to sell the property in satisfaction of the debt, in the event of a default. Id.

The Trust Deed lists Countrywide as the "Lender."  Trust Deed at 3 ¶ (C).  An entity called the Mortgage Electronic Registration Systems, Inc. ("MERS"), is listed as the "Beneficiary" of the Trust Deed.  Trust Deed at 3 ¶ (C) & (F).

The Trust Deed goes on to set forth the relationship between the Lender and the Beneficiary.[4]  Specifically, MERS (the Beneficiary), acts "solely as a nominee for Lender."[5]  Id. at 3

---

[4] As discussed further below, a deed of trust "typically secures a debt owed the beneficiary," which is typically the same entity as the Lender.  Monterey S. P. Partnership v. W. L. Bangham, Inc.. 49 Cal. 3d 454, 461 (1989) (emphasis added).  Here, the Beneficiary and the Lender are separate entities (although the Beneficiary is stated to be a "nominee" of the Lender), and the Trust Deed secures a debt owed to the Lender (Countrywide), not to the Beneficiary (MERS).  Complaint at 4 ("This Security Instrument secures to Lender ... the repayment of the loan ...").

[5] A "nominee" is "a person or entity designated to act for another in a limited role — in effect, an agent."  Fontenot v. Wells Fargo Bank, N.A., 198 Cal. App. 4th 256, 270-271 (1st Dist. 2011).  As an agent, the nominee, in general, "can be authorized to do any act the principal may do."  Id., at 480 n.9, citing Cal. Civ. Code §§ 2304 & 2305.

1  ¶ (E).  The Trust Deed goes on to state that "MERS (as nominee for

2  Lender ...) has the right: to exercise any or all of those

3  interests, including, but not limited to, the right to foreclose

4  and sell the Property; and to take any action required of Lender

5  including, but not limited to, releasing and cancelling this

6  Security Instrument."  Id. at 4-5.

7        **B.   Sale and Assignment of the Note and Trust Deed.**

8        Soon after the loan was executed, Countrywide sold its

9  interest in the note to "the FANNIE MAE Guaranteed REMIC Pass-

10 Through Certificates, FANNIE MAE REMIC Trust 2005-123 (the "REMIC

11 Trust").  Complaint at 5 ¶ 18.  Plaintiff alleges in some detail

12 that the sale to the REMIC Trust was beset with problems: that

13 there are no documents to prove that this sale occurred; that the

14 transfer of interests to the REMIC Trust are "void" under "New York

15 trust law" and a certain "Pooling and Servicing Agreement ('PSA');"

16 that the sale to the REMIC Trust was not a "true sale;" that the

17 security interest in the note was never "perfected;" and that the

18 note was never actually transferred to the REMIC Trust entities.

19 Complaint at 5-8 ¶¶ 18-28.

20       In August 2011, MERS executed an assignment of "all beneficial

21 interest" under the Trust Deed, together with the promissory note

22 it secured, to defendant Bank of America.  Complaint at 9 ¶ 32;

23 Assignment, RfJN Exh. B (ECF No. 9-1, p. 19) at 19.[6]  Defendant

24 _____

25       [6] On September 15, 2011, MERS executed a second assignment of
   the Trust Deed to defendant, which was also recorded by defendant.
26 ECF No. 9-1 at 28.  Neither side discusses this or explains what
   to make of it.

1  recorded the Assignment.  Assignment at 19.

2      In September 2011, ReconTrust, the Trustee on the Deed of

3  Trust, recorded a Notice of Default.  Complaint at 9 ¶ 33; RfJN

4  Exh. C ("Default") (ECF No. 9-1, pp. 21-23).  In December 2011,

5  ReconTrust recorded a Notice of Sale.  Complaint at 9 ¶ 34; RfJN

6  Exh. D (ECF No. 9-1, p. 26).

7      Plaintiff does not allege that the property has been sold, nor

8  that a sale is imminent.

9  **II.   MOTION TO DISMISS STANDARDS**

10     A dismissal motion under Fed. R. Civ. P. 12(b)(6) challenges

11 a complaint's compliance with the federal pleading requirements.

12 Under Fed. R. Civ. P. 8(a)(2), a pleading must contain a "short and

13 plain statement of the claim showing that the pleader is entitled

14 to relief."  The complaint must give the defendant "'fair notice

15 of what the ... claim is and the grounds upon which it rests.'"

16 Bell Atlantic v. Twombly, 550 U.S. 544, 555 (2007), quoting Conley

17 v. Gibson, 355 U.S. 41, 47 (1957).

18     To meet this requirement, the complaint must be supported by

19 factual allegations.  Ashcroft v. Iqbal, 556 U.S. 662, 678, 129 S.

20 Ct. 1937 (2009).  Moreover, this court "must accept as true all of

21 the factual allegations contained in the complaint."  Erickson v.

22 Pardus, 551 U.S. 89, 94 (2007).[7]

23

24     [7] Citing Twombly, 556 U.S. at 555-56, Neitzke v. Williams, 490
   U.S. 319, 327 (1989) ("[w]hat Rule 12(b)(6) does not countenance
   are dismissals based on a judge's disbelief of a complaint's
25 factual allegations"), and Scheuer v. Rhodes, 416 U.S. 232, 236
   (1974) ("it may appear on the face of the pleadings that a recovery
26 is very remote and unlikely but that is not the test" under

1    "While legal conclusions can provide the framework of a

2  complaint," neither legal conclusions nor conclusory statements are

3  themselves sufficient, and such statements are not entitled to a

4  presumption of truth.  <u>Iqbal</u>, 556 U.S. at 678.  <u>Iqbal</u> and <u>Twombly</u>

5  therefore prescribe a two step process for evaluation of motions

6  to dismiss.  The court first identifies the non-conclusory factual

7  allegations, and then determines whether these allegations, taken

8  as true and construed in the light most favorable to the plaintiff,

9  "plausibly give rise to an entitlement to relief."  <u>Iqbal</u>, 556 U.S.

10  at 664.

11    "Plausibility," as it is used in <u>Twombly</u> and <u>Iqbal</u>, does not

12  refer to the likelihood that a pleader will succeed in proving the

13  allegations.   Instead, it refers to whether the non-conclusory

14  factual allegations, when assumed to be true, "allow[ ] the court

15  to draw the reasonable inference that the defendant is liable for

16  the misconduct alleged."   <u>Iqbal</u>, 556 U.S. at 663.   "The

17  plausibility standard is not akin to a 'probability requirement,'

18  but it asks for more than a sheer possibility that a defendant has

19  acted unlawfully." <u>Id.</u> (quoting <u>Twombly</u>, 550 U.S. at 557).[8]   A

20  _____

21  Rule 12(b)(6)).

22    [8] <u>Twombly</u> imposed an apparently new "plausibility" gloss on
the previously well-known Rule 8(a) standard, and retired the
long-established "no set of facts" standard of <u>Conley v. Gibson</u>,
23  355 U.S. 41 (1957), although it did not overrule that case
outright.  <u>See Moss v. U.S. Secret Service</u>, 572 F.3d 962, 968 (9th
24  Cir. 2009) (the <u>Twombly</u> Court "cautioned that it was not outright
overruling <u>Conley</u> ...," although it was retiring the "no set of
25  facts" language from <u>Conley</u>).  The Ninth Circuit has acknowledged
the difficulty of applying the resulting standard, given the
26  "perplexing" mix of standards the Supreme Court has applied in

1  complaint may fail to show a right to relief either by lacking a

2  cognizable legal theory or by lacking sufficient facts alleged

3  under a cognizable legal theory.  <u>Balistreri v. Pacifica Police</u>

4  <u>Dep't</u>, 901 F.2d 696, 699 (9th Cir. 1990).

5  **III. ANALYSIS**

6       **A.   First Cause of Action: Slander of Title.**

7       Plaintiff alleges "slander of title" based on the recording

8  of the Assignment by MERS to defendant, and the subsequent

9  recording of the Notice of Default and the Notice of Sale.

10       The elements of a cause of action for slander of title
         are (1) a publication, which is (2) without privilege or
11       justification, (3) false, and (4) causes pecuniary loss.

12  <u>La Jolla Group II v. Bruce</u>, 211 Cal. App. 4th 461, 472 (5th

13  Dist. 2012).[9]  "False" in this context means "without legal

14  ────────────────────

15  recent cases.  <u>See</u> <u>Starr v. Baca</u>, 652 F.3d 1202, 1215 (9th
    Cir. 2011) (comparing the Court's application of the "original,
    more lenient version of Rule 8(a)" in <u>Swierkiewicz v. Sorema N.A.</u>,
16  534 U.S. 506 (2002) and <u>Erickson v. Pardus</u>, 551 U.S. 89 (2007) (per
    curiam), with the seemingly "higher pleading standard" in  <u>Dura</u>
17  <u>Pharmaceuticals, Inc. v. Broudo</u>, 544 U.S. 336 (2005), <u>Twombly</u> and
    <u>Iqbal</u>), <u>cert. denied</u>, 132 S. Ct. 2101 (2012).  <u>See also</u> <u>Cook v.</u>
18  <u>Brewer</u>, 637 F.3d 1002, 1004 (9th Cir. 2011) (applying the "no set
    of facts" standard to a Section 1983 case).
19
         [9] Plaintiff sufficiently alleges "publication" by alleging
20  that the documents were "recorded" at the County Recorder's office.
    <u>Accord</u>, <u>Albertson v. Raboff</u>, 46 Cal. 2d 375 (1956) (recording a <u>lis</u>
21  <u>pendens</u> is a "publication").  In any event, defendant does not
    challenge "publication" for purposes of this motion.  Defendant's
22  Motion To Dismiss ("Motion") (ECF No. 8) at 14.

23  Also, plaintiff sufficiently alleges "pecuniary loss" when he
    alleges that the slander of title "impairs the vendibility of
24  Plaintiff's Subject Property on the open market," and caused him
    "to retain attorneys to bring this action to cancel the instruments
25  casting doubt on Plaintiff's title."  Complaint at 10-11 ¶¶ 4-5.
    <u>See</u> <u>Davis v. Wood</u>, 61 Cal. App. 2d 788, 798, 143 P.2d 740, 745 (3rd
26  Dist. 1943) ("From the foregoing statements of the law relating to

1 | foundation." <u>Gudger v. Manton</u>, 21 Cal. 2d 537, 54 (1943) ("in

2 | order that the elements of that tort may exist, the lien must be

3 | false, that is without legal foundation"). The basis for

4 | plaintiff's claim is his assertion that MERS did not have the

5 | authority to transfer the "beneficial interest" in the Deed of

6 | Trust to defendant. He then asserts that the subsequent recordings

7 | of the Notice of Default and Sale were also false, because they are

8 | based upon the allegedly false Assignment.

9 |         **1. Falsity.**

10 |            **(a) The "Assignment."**

11 |               **(i) MERS is a mere "nominee."**

12 |      Plaintiff alleges that MERS, although named as the beneficiary

13 | on the Trust Deed, is authorized to act "solely as nominee" for

14 | Lender. Complaint at 10 ¶ 3. "[A]s such," plaintiff alleges,

15 | "MERS did not have the requisite authority to make a valid

16 | assignment of the beneficial interest in the Plaintiff's Deed of

17 | Trust to Defendant Bank of America." <u>Id.</u>

18 |      This claim is precluded by <u>Fontenot v. Wells Fargo Bank, N.A.</u>,

19 | 198 Cal. App. 4th 256, 270-271 (1st Dist. 2011). <u>Fontenot</u> involved

20 | a deed of trust which listed MERS as the "beneficiary," and also

21 | as the "nominee" of the Lender, using language identical to the

22 | Trust Deed at issue here. <u>Id.</u>, at 262-63. The plaintiff in

23 | <u>Fontenot</u> asserted, as plaintiff does here, that "MERS lacked the

24 |

25 | damages for slander of title ... it is apparent that the elements
26 | of damages are the loss caused by the impairment of vendibility and
   | the cost of clearing the title").

1  authority to assign the note because it was merely a nominee of the

2  lender and had no interest in the note." _Id._, at 270.  The Court

3  of Appeal rejected the claim, explaining that MERS did not purport

4  to assign the beneficial interest in its own right, but rather "as

5  nominee for the lender," which did have an assignable interest.

6  _Id._  As nominee, or agent, for the lender, MERS had as much

7  authority to make an assignment as its principal gave it, as

8  determined by the agency agreement between them.  _Id._, at 270-71.

9  There is no allegation here (and apparently none in _Fontenot_), that

10  the agency agreement precluded the assignment.   The court

11  concluded:

12          the allegation that MERS was merely a nominee is
           insufficient to demonstrate that MERS lacked authority
13          to make a valid assignment of the note on behalf of the
           original lender.
14

15  _Id._, at 271.

16                      **(ii) Other possible bases for MERS's lack of**
                        **authority.**
17

18       Plaintiff asserts that additional bases for MERS's lack of

19  authority to make the assignment are "for the reasons set forth in

20  [sic] herein above."  Complaint at 10 ¶ 3.  Although plaintiff does

21  not explain what those reasons are, it appears likely that

22  plaintiff is complaining that there is something about MERS itself

23  that precludes it from making the assignment.[10]   Plaintiff's

24       [10] If plaintiff has some other reason for alleging this lack
    of authority, the court does not know what it is.  Although
25  plaintiff is only required to provide a "short and plain statement"
    of his claim, the court is not required to guess which factual
26  allegations plaintiff believes support his claim.

1  description of MERS in the complaint (at 10 ¶ 2), is consistent

2  with the description given that entity by the Ninth Circuit, and

3  by California appellate courts:

> As case law explains, "MERS is a private corporation
> that administers the MERS System, a national electronic
> registry that tracks the transfer of ownership interests
> and servicing rights in mortgage loans.  Through the
> MERS System, MERS becomes the mortgagee of record for
> participating members through assignment of the members'
> interests to MERS.  MERS is listed as the grantee in the
> official records maintained at county register of deeds
> offices.  The lenders retain the promissory notes, as
> well as the servicing rights to the mortgages.  The
> lenders can then sell these interests to investors
> without having to record the transaction in the public
> record.  MERS is compensated for its services through
> fees charged to participating MERS members."

Gomes v. Countrywide Home Loans, Inc., 192 Cal. App. 4th 1149, 1151

(4th Dist.) (citations omitted), cert. denied, 132 S. Ct. 419

(2011); Cervantes v. Countrywide Home Loans, Inc., 656 F.3d 1034,

1038-40 (9th Cir. 2011).

The point of using MERS is to avoid the "cumbersome" process

of recording each assignment of the beneficial interest under the

deed of trust, and the note it secures.  See Cervantes, 656 F.3d

at 1039 ("This recording process became cumbersome to the mortgage

industry, particularly as the trading of loans increased"); Gomes,

192 Cal. App. 4th at 1151 ("A side effect of the MERS system is

that a transfer of an interest in a mortgage loan between two MERS

members is unknown to those outside the MERS system").[11]   This

---

[11]   Another "side-effect" of the MERS system is that
participants do not have to pay recording taxes each time the
promissory note is traded and the deed of trust is transferred.
See Cal. Gov't Code § 27201(a) (County Recorder shall accept

1  enables the securitization of the underlying mortgages, and

2  facilities their sale for investment – and speculation – on Wall

3  Street.  See Herrera v. Federal Nat. Mortg. Assn., 205 Cal. App.

4  4th 1495, 1503 (4th Dist. 2012) ("As explained in Fontenot, the

5  'MERS System' is 'a method devised by the mortgage banking industry

6  to facilitate the securitization of real property debt

7  instruments'").

8      By eliminating the practice of recording transfers of deeds

9  of trust, as the note is sold from lender to lender,[12] the MERS

10  system may well undermine the protections afforded debtors by

11  California's comprehensive system of non-judicial foreclosure, Cal.

12  Civ. Code §§ 2924-2928k.  Cf. Garfinkle v. Superior Court, 21 Cal.

13  3d 268, 279 (1978) ("these statutory regulations were enacted

14  primarily for the benefit of the trustor and for the greatest part

15  limit the creditors' otherwise unrestricted exercise of the

16  contractual power of sale upon default by the trustor").[13]

17  ────────────────

18  documents for recording "upon payment of proper fees and taxes").

19  [12] When a promissory note is sold, "any assignment of the
beneficial interest under a deed of trust may be recorded."  Cal.

20  Civ. Code § 2934.  See Cervantes, 656 F.3d at 1039 ("State laws
require the lender to record the deed in the county in which the
property is located.  Any subsequent sale or assignment of the deed

21  must be recorded in the county records, as well") (emphases added);
but see Wilson v. Pacific Coast Title Ins. Co., 106 Cal. App. 2d

22  599, 602 (4th Dist. 1951) (assignment of beneficial interest of the
deed of trust three years prior to recording it "was a valid

23  transfer of title").

24  [13] For example, by removing any public record of who really
owns the promissory note, the MERS system appears to undermine a

25  homeowner's ability to make sound financial decisions.  A
homeowner, especially one in serious financial distress, may

26  approach a lender who is a community bank or credit union, seeking

1    The participation of MERS also adds complexity to the deed of

2   trust.   Normally, the "beneficiary" and the "lender" are the same

3   entity.   See Huckell v. Matranga, 99 Cal. App. 3d 471, 481 (1979)

4   ("The deed of trust is an agreement between three parties, to wit,

5   a trustor (usually the debtor), the trustee (a neutral party), and

6   the beneficiary (usually a creditor)").   With MERS, the lender is

7   now   a   separate   entity   from   the   beneficiary   (although   the

8   beneficiary acts as a "nominee," or agent, for the lender), thus

9   making it more difficult to understand which rights attach to which

10   party.[14]

11    Having said as much, the court recognizes that it is too late

12   in the day for this federal district court, exercising diversity

13   jurisdiction,   to   find   that   an   assignment   of   MERS's   beneficial

14   interest   to   a   defendant   is   false   based   solely   upon   a   general

15   critique   of   the   MERS   system.     Although   it   appears   that   the

16   California Supreme Court has not spoken on the role of MERS, it

17   ──────────────

18   to work out his financial difficulties.   The homeowner might have
    an entirely different approach if the lender is an overseas
19   multinational bank, or Wall Street investors. On the other hand,
    it must be acknowledged that these protections are diminished in
20   California by the use of deeds of trust to secure promissory notes,
    rather than mortgages.   When a promissory note is secured by a
21   mortgage, in which the lender has been granted the power of sale,
    each assignment of the note must be recorded in order to pass along
22   the power of sale to the assignee.   See Cal. Civ. Code § 2932.5.
    This mandatory recording process does not apply to deeds of trust,
23   where the power of sale is vested in a third party, the trustee.
    See Herrera, 205 Cal. App. 4th at 1509 (Section 2932.5 "does not
24   apply to trust deeds, in which the power of sale is granted to a
    third party, the trustee").

25    [14] For example, the Trust Deed cryptically states that "MERS
26   holds only legal title to the interests granted by Borrower in this
    Security Interest."   Trust Deed at 4.

1    also appears that the Courts of Appeal have reviewed its role, and

2    approved it.[15]   See, e.g., Herrera, 205 Cal. App. 4th at 1498 (4th

3    Dist. 2012) ("The courts in California have universally held that

4    MERS, as nominee beneficiary, has the power to assign its interest

5    under a deed of trust").   Indeed, the specific practice of making

6    MERS the beneficiary and also the nominee for the lender has been

7    specifically approved by a California Court of Appeal:

8        There is nothing inconsistent in MERS's being designated
         both as the beneficiary and as a nominee, i.e., agent,
9        for the lender.   The legal implication of the
         designation is that MERS may exercise the rights and
10       obligations of a beneficiary of the deed of trust, a
         role ordinarily afforded the lender, but it will
11       exercise those rights and obligations only as an agent
         for the lender, not for its own interests. ... [T]here
12       is nothing ambiguous or unusual about the legal
         arrangement.

13

14   Fontenot, 198 Cal. App. 4th at 273.

15       The "slander of title" claim regarding the Assignment, will

16   be dismissed for failure to successfully allege falsity.

17   ////

18

19       [15] Where, as here, "the district court sits in diversity, or
     hears state law claims based on supplemental jurisdiction, the
20   court applies state substantive law to the state law claims."
     Mason and Dixon Intermodal, Inc. v. Lapmaster Intern. LLC, 632 F.3d
21   1056, 1060 (9th Cir. 2011).   This court is "bound by pronouncements
     of the California Supreme Court on applicable state law, but in the
22   absence of such pronouncements," this court must "follow decisions
     of the California Court of Appeal unless there is convincing
23   evidence that the California Supreme Court would hold otherwise."
     Carvalho v. Equifax Information Services, LLC, 629 F.3d 876, 889
24   (9th Cir. 2010); Stoner v. New York Life Ins. Co., 311 U.S. 464,
     467 (1940) ("in cases where jurisdiction rests on diversity of
25   citizenship, federal courts ... must follow the decisions of
     intermediate state courts in the absence of convincing evidence
26   that the highest court of the state would decide differently").

1           **(b)   The Notices of Default and Sale.**

2         As for the Notice of Default and the Notice of Sale, plaintiff

3    does not explain what was false about them, except that they are

4    based upon the Assignment, and therefore "any subsequent documents

5    relying on such assignment would be invalid." Complaint at 10 ¶¶ 3

6    & 4.  The problem with this allegation, is that there is nothing

7    in the Complaint to support the assertion that the Assignment is

8    false, as discussed above, and so the allegedly consequent falsity

9    of the Notices has no basis.

10        Plaintiff makes no other allegation of falsity attaching to

11   the Notice of Default, either.  However, an independent look at the

12   Notice of Default reveals that it includes a sworn declaration that

13   Bank of America Home Loan "tried with due diligence to contact the

14   borrower in accordance with California Civil Code Section 2923.5."

15   Trust Deed at 24.   This declaration is required by law to be

16   attached to the Notice of Default.  Cal. Civ. Code § 2923.5(b).

17   Plaintiff elsewhere in the complaint adequately alleges that this

18   declaration is "false." Complaint at 13 ¶ 14.  If the declaration

19   is false – and defendant did not actually use the required "due

20   diligence" in trying to contact plaintiff – then the Notice of

21   Default itself is false, since the declaration must be attached to

22   the Notice.  Cal. Civ. Code § 2923.5(b).  Moreover, the Notice is

23   invalid, since "due diligence" is a statutory prerequisite to

24   filing the Notice of Default.  Cal. Civ. Code § 2923.5(a), (e).

25        The Notice of Trustee's Sale asserts that the Trustee will

26   sell the property at auction on a specified date.  Trust Deed at

26.  It is sufficiently alleged to be false, because – accepting as true plaintiff's allegation regarding the falsity of the Notice of Default and defendant's failure to use "due diligence" – the Trustee could not sell the property at auction. Id., §§ 2923.5(a) (cannot record notice of default prior to performing due diligence) & 2924 (cannot exercise power of sale prior to filing the notice of default).

### 2. Privilege.

Defendant argues that the filing of the Notice of Default and the Notice of Sale, even if they are false, are "privileged" pursuant to Cal. Civ. Code § 2924(d)(1).  That section provides that the "mailing, publication, and delivery" of any notice "required by this section" is privileged.  As discussed above, the recording of a Notice of Default and a Notice of Sale are "required" by Section 2924 before a non-judicial foreclosure can proceed. Id., § 2924(a)(1) & (3).

The problem for defendant is that the recording of the Notice of Default and the Notice of Sale are not required – indeed they are prohibited – if defendant has not first completed its "due diligence" under Section 2923.5.  Since plaintiff has adequately alleged that defendant did not do the required "due diligence," the privilege cannot apply.[16]

---

[16] The court notes that the Notices of Default and Sale appear to have been recorded at the request of the Trustee, not the defendant.  See Default at 21; Sale at 26.  However, defendant's motion does not assert that it did not record these documents, and since the Trustee presumably did not act independently and on its own behalf, the court will not consider the matter further.

1          **B.    Second Cause of Action: Wrongful Foreclosure.**

2          "California recognizes a cause of action for wrongful

3    foreclosure under equitable principles." <u>Barroso v. Ocwen Loan</u>

4    <u>Servicing, LLC</u>, 208 Cal. App. 4th 1001, 1016 (2nd Dist. 2012).  The

5    elements of this claim are:

6              (1) the trustee or mortgagee caused an illegal,
               fraudulent, or willfully oppressive sale of real
7              property pursuant to a power of sale in a mortgage or
               deed of trust; (2) the party attacking the sale (usually
8              but not always the trustor or mortgagor) was prejudiced
               or harmed; and (3) in cases where the trustor or
9              mortgagor challenges the sale, the trustor or mortgagor
               tendered the amount of the secured indebtedness or was
10             excused from tendering.

11   <u>Lona v. Citibank, N.A.</u>, 202 Cal. App. 4th 89, 104 (6th Dist. 2011).

12   Defendant argues that plaintiff's claim fails because: (1) the

13   Complaint fails to establish that the defendants lacked the

14   authority to foreclose, presumably an attack on the first element;

15   (2) plaintiff does not allege a sale occurred, and therefore he

16   alleges no "prejudice" or "harm;" and (3) plaintiff does not allege

17   a "credible tender."

18         Because plaintiff adequately pleads a claim for wrongful

19   foreclosure, defendant's motion to dismiss this claim will be

20   denied.

21             **1.    Authority to foreclose; illegality of foreclosure.**

22         Defendant's attack on the first element fails because

23   plaintiff adequately alleges that defendant lacks the authority to

24   foreclose, and that foreclosure at this point would be illegal for

25   failure to comply with a statutory condition precedent, namely Cal.

26   Civ. Code § 2923.5.  Hidden away in his Third Cause of Action (and

completely missing from the "wrongful foreclosure" allegations),

is plaintiff's allegation that defendant "violated California Civil

Code Section 2923.5 by failing to contact Plaintiff, in person or

by telephone, at least thirty (30) days prior to causing ReconTrust

to record the Notice of Default."  Complaint at 12 ¶ 14.[17]  This

allegation is plainly sufficient to state "a cause of action for

wrongful foreclosure based on the purported failure to comply with

Civil Code section 2923.5 before recordation of the notice of

default."  Intengan v. BAC Home Loans Servicing LP, 214 Cal. App.

4th 1047, 1058 (1st Dist. 2013).

        Under California law, the trustee may not exercise its power

of sale until it has first filed a notice of default in the county

recorder's office.  Cal. Civ. Code § 2924(a)(1).  However, the

trustee "may not record a notice of default" until it has first

contacted the borrower "in person or by telephone in order to

assess the borrower's financial situation and explore options for

the   borrower   to   avoid   foreclosure."   Cal.   Civ.   Code

§ 2923.5(a)(1)(A), (a)(2).

        If the trustee cannot contact the borrower, it may record the

notice of default only if it conducts "due diligence," as defined

in the statute.  Id., § 2923(e).  Specifically, the servicer must

---

        [17] The allegations found in the "wrongful foreclosure" claim
itself do not support the claim.  Plaintiff alleges that the
foreclosure is wrongful because defendant failed to comply with
Cal. Civ. Code § 2932.5. However, Section 2932.5 is not applicable
to this case, as "It is well established that section 2932.5 does
not apply to trust deeds, in which the power of sale is granted to
a third party, the trustee."  Herrera, 205 Cal. App. 4th at 1509.

1  first send the borrower a letter by first class mail, and it must

2  contain information specified in the statute. <u>Id.</u>, § 2923(e)(1).

3  Next, the servicer must call the borrower by phone "at least three

4  times at different hours and on different days." <u>Id</u>,

5  § 2923.5(e)(2)(A).  Next, the servicer must send the borrower a

6  certified letter, return receipt requested. <u>Id.</u>, § 2923.5(e)(3).

7  Even if all that fails, the servicer still has not satisfied its

8  "due diligence" requirements unless it also has provided "a means

9  for the borrower to contact it in a timely manner" via a toll-free

10 telephone call, <u>id.</u>, § 2923.5(e)(4), and also provided on its

11 internet home page, a "prominent link" to certain sources of

12 information as specified in the statute, <u>id.</u>, § 2923.5(e)(5).

13      Plaintiff's allegation that defendant did not comply with this

14 condition precedent is plainly sufficient to state a claim for

15 wrongful foreclosure.  <u>Intengan</u>, 214 Cal. App. 4th at 1056

16 (allegation that respondents "'<u>did not comply</u> with such contact and

17 due diligence requirements pursuant to Civil Code section 2923.5,'"

18 when broadly construed on demurrer, "stated a cause of action for

19 wrongful foreclosure based on respondents' alleged noncompliance

20 with Civil Code section 2923.5").

21      Defendant argues that plaintiff's allegation is

22 "conclusionary" and should not survive a motion to dismiss.  The

23 court disagrees.  It is a sufficient allegation under notice

24 pleading standards.  <u>See</u> <u>Dumas v. First Northern Bank</u>, 2011 WL

25 4906412 at *10, 2011 U.S. Dist. LEXIS 119107 at *27-*28 (E.D. Cal.

26 2011) (Karlton, J.) ("In this case, plaintiff asserts that he was

1 never contacted by the defendants prior to the Notice of Default.
2 Defendant Chase ... argues that plaintiff fails to state a claim
3 under § 2923.5 because plaintiff did not specifically allege that
4 the lender did not practice due diligence in trying to contact the
5 borrower.  However, the court concludes that the FAC is adequate
6 under the notice pleading requirements that govern this cause of
7 action").

8    Defendant argues that the declaration it attached to the
9 Notice of Default – as it was required to do by statute –
10 completely rebuts plaintiff's allegation.  The declaration states,
11 in its entirety: "Bank of America Home Loan ... tried with due
12 diligence to contact the borrower in accordance with California
13 Civil Code Section 2923.5."   Default at 24.   In fact, the
14 declaration – which is itself purely a statement of conclusion –
15 at most creates a factual issue which should not be resolved on
16 this dismissal motion.[18]  The declaration sets forth no facts to
17 support its "due diligence" conclusion, even though the defendant
18 is the one in a position to know whether any of the elements of
19
20
_____

21   [18] "Civil Code section 2923.5 requires not only that a
declaration of compliance be attached to the notice of default, but
22 that the bank actually perform the underlying acts (i.e.,
contacting the borrower or attempting such contact with due
23 diligence) that would constitute compliance. While judicial notice
could be properly taken of the existence of Jones' declaration, it
24 could not be taken of the facts of compliance asserted in the
declaration, at least where, as here, Intengan has alleged and
25 argued that the declaration is false and the facts asserted in the
declaration are reasonably subject to dispute." Intengan, 214 Cal.
26 App. 4th at 1057.

19

1  "due diligence" were actually carried out.[19]

2      **2.  Prejudice or harm.**

3      Defendant attacks the second element of this claim by arguing

4  that plaintiff has not alleged prejudice or harm, since he has

5  failed to allege that the sale has even occurred.  However, this

6  is a claim to <u>enjoin</u> the foreclosure, and to avoid the harm that

7  would occur if plaintiff lost his house.[20]   <u>See</u> <u>Intengan</u>, 214 Cal.

8  App. 4th (reversing demurrer on a wrongful foreclosure claim that

9  is filed prior to the foreclosure, and collecting state and federal

10 cases permitting the claim prior to foreclosure).

11     **3.  Tender of the amount owed.**

12     Defendant asserts that the wrongful foreclosure claim must be

13 dismissed because plaintiff failed to tender the amount of the

14 secured debt.  Motion at 14-15.  However, the only cases defendant

15 cites are those in which the borrower is attempting to <u>set aside</u>

16 a foreclosure sale that has already occurred.[21]   Plaintiff here

17 _____

18    [19] Plaintiff, in any event, rebuts defendant's conclusory
   declaration with his own conclusory statement that the declaration
19 "is false." <u>See</u> Complaint at 13 ¶ 14.

20    [20] To the degree plaintiff seeks <u>damages</u> arising from a
   wrongful foreclosure due to an alleged lack of authority to
21 foreclose, such a claim is premature, and not cognizable prior to
   a foreclosure sale. <u>Robinson v. Countrywide Home Loans, Inc.</u>, 199
22 Cal. App. 4th 42, 46 (4th Dist. 2011) ("We agree with the <u>Gomes</u>
   court that the statutory scheme (§§ 2924-2924k) does not provide
23 for a preemptive suit challenging standing").

24    [21] <u>Abdallah v. United Savings Bank</u>, 43 Cal. App. 4th 1101,
   1105 (1st Dist. 1996) ("The property was sold under the deed of
25 trust," and plaintiffs sued "seeking to set aside the trustee's
   sale"), <u>cert. denied</u>, 519 U.S. 1081 (1997); <u>Arnolds Management</u>
26 <u>Corp. v. Eischen</u>, 158 Cal. App. 3d 575, 577 (2d Dist. 1984)

seeks to enjoin the trustee's sale, not to set it aside.  Moreover,
he seeks to enjoin it for failure of the defendant to comply with
a condition precedent to the sale, namely, the requirements of Cal.
Civ. Code § 2923.5, discussed below.  In such a case, tender is not
required.  See Intengan, 214 Cal. App. 4th at 1053 (collecting
cases holding that "[w]hile the tender requirement may apply to
causes of action to set aside a foreclosure sale, a number of
California and federal courts have held or suggested that it does
not apply to actions seeking to enjoin a foreclosure sale—at least
where the lenders had allegedly not complied with a condition
precedent to foreclosure") (emphasis in text); Pfeifer v.
Countrywide Home Loans, Inc., 211 Cal. App. 4th 1250, 1280–1281
(1st Dist. 2012) (plaintiffs "do not need to allege that they will
tender or have tendered the full amount due on their note," in line
with other courts that "have not required tender when the lender
has not yet foreclosed and has allegedly violated laws related to
avoiding the necessity for a foreclosure").

The rationale for not requiring a full tender, specifically
in the case where a violation of Section 2923.5 is alleged, is set
forth in Mabry v. Superior Court:

_____

("before a junior lienor may set aside a nonjudicial foreclosure
of real property under a deed of trust because of irregularities
in the sale, the junior lienor must first tender the full amount
owing on the senior obligation"); Nguyen v. Calhoun, 105 Cal. App.
4th 428 (6th Dist. 2003) (involving "competing claims of ownership
to residential real property. ... The defendants claim their title
as a result of purchasing the property ... at the lender's
foreclosure sale"); Alicea v. GE Money Bank, 2009 WL 2136969 at *3,
2009 U.S. Dist. LEXIS 60813 (N.D. Cal. 2009) (dismissing
plaintiff's claim to "set aside Trustee's sale").

1
2
3
4
5

> The right conferred by section 2923.5 is a right to be contacted to "assess" and "explore" alternatives to foreclosure prior to a notice of default.  It is enforced by the postponement of a foreclosure sale. Therefore it would defeat the purpose of the statute to require the borrower to tender the full amount of the indebtedness <u>prior</u> to any enforcement of the right to — and that's the point — the right to be contacted prior to the notice of default.

6 185 Cal. App. 4th 208, 225 (4th Dist. 2010) (emphasis in text).

7   **C.   Third Cause of Action: Cal. Civ. Code § 2923.5.**

8   Plaintiff alleges that the Notice of Default and the Notice

9 of Trustee's Sale are void and invalid because defendant failed to

10 contact him, as required by Cal. Civ. Code § 2923.5, 30 days before

11 recording the Notice of Default.  As discussed above, plaintiff

12 adequately pleads under Section 2923.5, which in turn, provides

13 plaintiff with a private right of action.  <u>Mabry v. Superior Court</u>,

14 185 Cal. App. 4th at 214 ("May section 2923.5 be enforced by a

15 private right of action?  Yes.  Otherwise the statute would be a

16 dead letter").  Plaintiff's remedy under that section is limited

17 to a postponement of the foreclosure sale until defendant has

18 complied with the statute.  <u>Id.</u> ("The right of action is limited

19 to obtaining a postponement of an impending foreclosure to permit

20 the lender to comply with section 2923.5").

21   **D.   Fourth Cause of Action: Real Estate Settlement Procedures Act ("RESPA"), 12 U.S.C. § 2605.**[22]

22

23   [22]  Plaintiff asserts this claim against "Wells Fargo,"
Complaint at 13, which is not a defendant.  The court presumes that
24 this is a typographical error, as the fact section of the complaint
is clear that the request was sent to "Bank of America."  The claim
25 also asserts that the RESPA violation is under "1 U.S.C. § 2601 et
seq."  The presumes that the title plaintiff is referring to "12
26 U.S.C. § 2601 et seq."

1    Plaintiff alleges that he sent defendant a "qualified written
2    request" raising "certain issues" about the note and the Deed of
3    Trust.   Complaint at 9 ¶ 35.   He alleges that defendant failed to
4    provide a meaningful reply.

5    RESPA provides that if the loan servicer receives a "qualified
6    written request" from the borrower, the servicer "shall provide a
7    written response."   12 U.S.C. § 2605(e)(1)(A).   A "qualified
8    written request" is a letter that: (1) requests "information
9    relating to the servicing of" the note, <u>id.</u>, § 2605(e)(1)(B); and
10   (2) sets forth the reasons the borrower believes his account is in
11   error, or "provides sufficient detail to the servicer regarding
12   other information sought by the borrower."   <u>Id.</u>,
13   § 2605(e)(1)(B)(ii).[23]

14   Defendant moves to dismiss this claim on the grounds that it
15   provided an adequate response to plaintiff's letter.   The court
16   will dismiss the claim, but for an entirely different reason.
17   Plaintiff's own allegations reveal that his letter to defendant
18   only made inquiries about the promissory note and the Deed of Trust
19   itself – including its assignment and transfer, its securitization
20   into the REMIC Trust, and alleged "robo-signing" of documents
21   (which he does not identify).   Thus, plaintiff's letter is not a
22   "qualified written request" for information about the <u>servicing</u> of
23   the loan, rather it is a request for information about the loan

24

25   _____
26   [23] The request must also properly identify the borrower.   12
     U.S.C. § 2605(e)(1)(B)(i).

itself.[24]   As such, it is not a "qualified written request," and did not trigger defendant's obligation to respond to it, at least not under RESPA.  Medrano v. Flagstar Bank, FSB, 704 F.3d 661, 666-67 (9th Cir. 2012) petition for cert. filed, 81 U.S.L.W. 3582 (Apr. 13, 2013) (No. 12-1205), quoting 12 U.S.C.§ 2605(i)(3).  Although Medrano dealt with a challenge to a loan's "validity or its terms," its logic applies to all aspects of the loan that are not encompassed within the "servicing" of the loan.  Here, those other aspects include securitizing the loan, and transferring or assigning the deed of trust.  Those matters relate to who is the Trustee, and who is the beneficial owner of the interest in the note, not anything relating to payment to the loan servicer.

This claim will be dismissed, with prejudice.

**E.    Fifth Cause of Action: Cal. Bus. & Prof. Code § 17200**

Plaintiff asserts a claim under Cal. Bus. & Prof. Code § 17200, et seq., which provides a remedy for "any unlawful ... business act."  Defendant moves to dismiss on the ground that plaintiff has not alleged any wrongful conduct.

Defendant is wrong.  Plaintiff has properly alleged that

---

[24] The term "servicing" is defined to be:

receiving any scheduled periodic payments from a borrower pursuant to the terms of any loan, including amounts for escrow accounts described in section 2609 of this title, and making the payments of principal and interest and such other payments with respect to the amounts received from the borrower as may be required pursuant to the terms of the loan.

12 U.S.C.A. § 2605(i)(3).

defendant violated Cal. Civ. Code § 2923.5.   That is enough to survive dismissal.   <u>Skov v. U.S. Bank Nat. Assn.</u>, 207 Cal. App. 4th 690, 694 (6th Dist. 2012) (reversing demurrer for Section 17200 claim which was based upon the allegation that "U.S. Bank failed to comply with section 2923.5 because it did not contact or attempt to contact her to discuss her options to avoid foreclosure prior to filing the notice of default").

The motion to dismiss the Section 17200 claim will be denied.

**IV.    CONCLUSION**

For the reasons set forth above, IT IS HEREBY ORDERED THAT:

**1.**  Defendant's motion to dismiss the First Claim ("slander of title"), is **GRANTED IN PART, WITHOUT PREJUDICE**, as it relates to the recording of the Assignment only;

**2.**  Defendant's motion to dismiss the First Claim ("slander of title"), is **DENIED IN PART**, as it relates to the recording of the Notices of Default and Sale only;

**3.**  Defendant's motion to dismiss the Second Claim ("wrongful foreclosure"), is **DENIED;**

**4.**  Defendant's motion to dismiss the Third Claim (Cal. Civ. Code § 2923.5), is **DENIED**

**5.**   Defendant's motion to dismiss the Fourth Claim (federal Real Estate Settlement Procedures Act ("RESPA")), is **GRANTED WITH PREJUDICE;**

**6.**  Defendant's motion to dismiss the Fifth Claim ("Unfair Competition"), is **DENIED;** and

////

1          **7.**  All dates currently set in this matter are

2 **CONFIRMED**.

3        IT IS SO ORDERED.

4        DATED:  May 21, 2013.

5

6

7                          _____
                           LAWRENCE K. KARLTON
8                          SENIOR JUDGE
                           UNITED STATES DISTRICT COURT
9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26